UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KERRY WHITWORTH,<br><br>               Plaintiff,<br>     v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>               Defendant. | CASE NO. C20-0315JLR<br><br>ORDER ON MOTION TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

Before the court are two motions filed by Plaintiff Kerry Whitworth: (1) a motion to exclude the testimony of Dr. Timothy Chen (MTE (Dkt. # 19)); and (2) a motion for partial summary judgment (MSJ (Dkt. # 20)). Defendant USAA Casualty Insurance Company ("USAA CIC") opposes both motions. (MTE Resp. (Dkt. # 26); MSJ Resp. (Dkt. # 22).) The court has considered the motions, the submissions in favor of and in

//

opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES both motions.

## II. BACKGROUND

This case centers on the Personal Injury Protection ("PIP") benefits that Mr. Whitworth filed for after being injured in a car accident. (*See* Compl. (Dkt. # 1-1) ¶¶ 5-19, 29-44, 52-53.) The court details the relevant factual background before summarizing the procedural background of this matter.

### A. Factual Background

In April 2018, Mr. Whitworth, his wife, and their granddaughter suffered injuries resulting from a car accident; all three filed PIP claims to USAA CIC under the Whitworths' policy number 0021 667 02C 7102 7 (the "Policy"). (Evans Decl. (Dkt. # 24) ¶ 4, Ex. 4 at CF_0467-69;[2] *id.* ¶ 1, Ex. 1 ("Policy"); *id.* ¶ 11.) The Policy allowed PIP medical benefits in the amount of $50,000 per person, per accident. (Policy at CP_005.) The Policy defined "medical and hospital benefits" as "the medical payment fee for medically necessary and appropriate medical service incurred by or on behalf of the covered person within three years from the . . . automobile accident." (*Id.* at CP_024.) It in turn defined "medically necessary and appropriate medical service" as

//

---

[1] Mr. Whitworth requests oral argument on both motions (*see* MTE at 1; MSJ at 1), but the court finds that oral argument would not be helpful in its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The exhibits described in Mr. Evans's declaration are not filed with his declaration and instead are attached to USAA CIC's response to the motion for partial summary judgment. (*See* MSJ Resp.; Evans Decl.)

1   "those services . . . provided or prescribed by a licensed hospital, licensed physician, or
2   other licensed medical provider that, as determined by [USAA CIC] or someone on [its]
3   behalf, are required to identify or treat [bodily injury] caused by an auto accident." (*Id.*)
4         Mr. Whitworth subsequently sought treatment at Lynden Physical Therapy for a
5   left shoulder strain, including treatment received on September 28, 2018. (*See* Courtney
6   Decl. (Dkt. # 21) at 1-2,[3] Ex. A; Evans Decl. ¶ 5, Ex. 5 at MEDICAL_3160.) USAA CIC
7   sent the records for this treatment to Auto Injury Solutions ("AIS"), a third-party medical
8   consultant service that evaluates records for medical necessity. (*See* Evans Decl. ¶ 5, Ex.
9   5.) Dr. Thomas Albus, an orthopedic surgeon with AIS, found that the physical therapy
10  "service(s) delivered on 9/28/18 was not medically necessary" because the need for such
11  treatment over three months after the accident was not supported. (*Id.* at
12  MEDICAL_3181.) Dr. Wadih Joseph Absi, another orthopedic surgeon with AIS,
13  completed a "peer appeal" of Dr. Albus's opinion and reached the same conclusion: The
14  treatment was not medically necessary because the physical therapy sessions "surpassed
15  the guideline recommended 8-12 visits." (*Id.* at MEDICAL_3160.) Thus, Dr. Absi
16  concurred with Dr. Albus that reimbursement should be denied for the physical therapy
17  sessions on September 28, 2018. (*Id.* at MEDICAL_3160-61.)
18        Finally, Dr. Timothy Chen with AIS also reviewed Mr. Whitworth's shoulder
19  injury and concluded that because of the "long delay in [the] first documented report of
20  shoulder pain" of almost four months after the car accident, "causality to the [car

---

[3] Ms. Courtney's declaration does not have paragraph numbers. (*See* Courtney Decl.) Thus, the court cites to the applicable page number.

accident] cannot be definitively established" for the left shoulder pain. (*Id.* at MEDICAL_0780.)  Based on these physician reviews, USAA CIC initially did not cover the cost of the September 28th physical therapy sessions. (*See* Courtney Decl. at 1-2, Ex. A at MEDICAL_3169-70.)

USAA CIC additionally utilized a methodology, called the Milliman Reasonable Fee Methodology ("Milliman Methodology"), to evaluate the reasonableness of the billed charge for a medical service. (Mills Decl. (Dkt. # 23) ¶ 5.) The Milliman Methodology looks at a collection of medical service charge data from the United States Department of Health and Human Services ("HHS") and the Centers for Medicare and Medicaid Services ("CMS") for a particular geographic area and calculates a reasonable fee amount "based on the 80th percentile of billed charges for each medical service in each geographic area." (*Id.* ¶¶ 2, 16, 21-22.) In other words, for every 1,000 charges in the data, 800 charges are less than or equal to the calculated reasonable fee estimate. (*Id.* ¶¶ 2, 17, 25.) The methodology, as applied to Mr. Whitworth's claims, took into account the geographic area of Whatcom County, the type of provider, the medical service provided, the "modifier information" on the bill, the place of service, the number of visits, and when the service occurred. (*Id.* ¶¶ 7-15.) Mr. Whitworth's physical therapy billed $65 per unit, but the Milliman Methodology calculated a reasonable fee amount of $51.22 per unit. (*Id.* ¶ 50, Ex. 2 at 1.)

On June 20, 2019, Lynden Physical Therapy notified Mr. Whitworth that "he needs to look for a new [physical therapy] clinic." (Courtney Decl. at 2, Ex. C at 1.)  A week later, on June 27, 2019, Mr. Whitworth wrote to USAA CIC challenging, amongst

other denials, USAA CIC's refusal to fully cover various physical therapy sessions. (Courtney Decl. at 2, Ex. D ("6/27/19 Letter") at 5-6.)  The parties continued to negotiate various offers.  (*See* Evans Decl. ¶ 4, Ex. 4 at CF_1662-66, CF_2772, CF_2790, CF_2811-12.)  USAA CIC sent a letter on July 8, 2019, offering $75,000 to resolve the claim and asking for a response.  (*Id.* at CF_2790.)  On August 2, 2019, USAA CIC again made an offer, this time for $100,000 to settle the claim.  (*Id.* at CF_2882-83.)  In September 2019, upon further review, USAA CIC overturned previously declined payments and partially reimbursed Mr. Whitworth for those sessions.  (Courtney Decl. at 1-2, Ex. A at MEDICAL_3164-65.)  USAA CIC continued to process payments related to Mr. Whitworth's claim through March 2020—many of which related to denials in Mr. Whitworth's June 27, 2019, letter—until it reached Mr. Whitworth's maximum coverage limit of $50,000.  (*See* Evans Decl. ¶ 2, Ex. 2 at 4, 7-8; 6/27/19 Letter at 1-2.)

**B.  Procedural Background**

Mr. Whitworth brought suit on October 31, 2019, in state court, asserting, in part, claims for bad faith and violations of the Washington Consumer Protection Act ("CPA"). (*See* Compl. ¶¶ 29-44, 52-53.)  USAA CIC removed this suit to federal court, (*see* Not. of Removal (Dkt. # 1)), and the parties proceeded to exchange initial disclosures, (*see* Wilson Decl. (Dkt. # 27) ¶ 1, Ex. 1).[4]  Mr. Whitworth identified Dr. Chen as a potential witness "to testify regarding the necessity of the care for [Mr. Whitworth's] injuries

//

---

[4] Again, the exhibits referenced in Mr. Wilson's declaration are not filed with the declaration and instead are attached to USAA CIC's response to the motion to exclude.  (*See* MTE Resp.; Wilson Decl.)

1  caused by the collision." (*Id.* at 6.) USAA CIC also identified Dr. Chen as a "percipient
2  fact witness with expert qualifications" in response to an interrogatory and identified Dr.
3  Chen's review reports as related to the handling of Mr. Whitworth's claim. (Wilson
4  Decl. ¶ 2, Ex. 2 at 7; *id.* ¶ 3, Ex. 3 at 5.)

5  When USAA CIC scheduled Dr. Chen's deposition, Mr. Whitworth's counsel
6  expressed confusion at why Dr. Chen was being deposed, as USAA CIC had not
7  disclosed Dr. Chen as an expert witness. (*Id.* ¶ 5, Ex. 5 at 2, 4-5.) USAA CIC's counsel
8  responded that Dr. Chen was being called as a fact witness, as he had participated in the
9  handling of Mr. Whitworth's claim. (*Id.* at 2.) Mr. Whitworth's counsel then purported
10 that this deposition was "occurring by ambush," (*id.* ¶ 4, Ex. 4 at 5), but neither party
11 followed the discovery dispute process to raise this issue with the court, (*see* Sched.
12 Order (Dkt. # 8) at 1 (setting discovery motion deadline for March 19, 2021); *id.* at 2
13 (directing parties to request conference with court before moving for discovery-related
14 order); *see generally* Dkt.)[5] Instead, a month later, Mr. Whitworth filed the instant
15 motion to exclude Dr. Chen's testimony with his dispositive motion. (*See* MTE.)

### III.   ANALYSIS

Mr. Whitworth brings two motions: (1) a motion to exclude the testimony of Dr. Chen (*see* MTE); and (2) a motion for partial summary judgment on his bad faith and CPA claims (*see* MSJ). The court addresses each in turn.

---

[5] Mr. Whitworth filed an "Objection to Discovery and Preservation Deposition of Dr. Timothy Chen" on April 7, 2021, but neither noted it as a motion nor contacted the court as directed by the scheduling order. (*See* Obj. (Dkt. # 17).) Because Mr. Whitworth did not note the filing as a motion, the parties did not brief the issue. (*See* Dkt.)

### A.  Motion to Exclude Testimony of Dr. Chen

Mr. Whitworth moves to "prohibit use of Dr. Timothy Chen at trial" in his two-page motion to exclude.[6]  (*See* MTE at 1-2.)  At the outset, it is unclear whether Mr. Whitworth's motion is one to exclude under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)—as the timing of his filing suggests (*see* Sched. Order at 1 (setting deadline for motion to exclude expert testimony on same date dispositive motions are due))—or one under Federal Rule of Civil Procedure 37(a)(3)(A) to exclude testimony as a sanction for USAA CIC's failure to disclose Dr. Chen as an expert witness, (*see* MTE at 2 (chastising USAA CIC for "attempt[ing] to perpetuate testimony for a non-disclosed expert" and oscillating between objecting to "use of Dr. Chen for any purpose" and "any testimony by Dr. Chen as an expert").  Either way, Mr. Whitworth's motion is woefully inadequate.

If Mr. Whitworth is attempting to exclude Dr. Chen's testimony as inadmissible expert testimony, his motion is unavailing because he does not provide any ground for exclusion.  Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony in federal court and requires that the expert be qualified and that the "'[e]xpert testimony . . . be both relevant and reliable.'"  *Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001)); Fed. R. Evid. 702.  Mr. Whitworth does not cite Federal Rule of Evidence 702, *Daubert*, or any other relevant authority, let alone offer any analysis on the

//

---

[6] Mr. Whitworth did not file a reply.  (*See* Dkt.)

admissibility of Dr. Chen's testimony as an expert. (*See* MTE.) Moreover, USAA CIC maintains—as it has consistently communicated to Mr. Whitworth—that it is not calling Dr. Chen as an expert witness. (MTE Resp. at 1; Wilson Decl. ¶ 5, Ex. 5 at 2.)

If, on the other hand, Mr. Whitworth is attempting to exclude Dr. Chen's testimony as a discovery sanction, his motion is both procedurally and substantively deficient. Procedurally, any such motion is untimely, as the deadline for discovery-related motions has long passed. (*See* Sched. Order at 1.) Substantively, and more importantly, USAA CIC did not disclose Dr. Chen as an expert witness because it is not calling him as an expert witness. (MTE Resp. at 5; Wilson Decl. ¶ 5, Ex. 5 at 2.) Dr. Chen reviewed some of Mr. Whitworth's medical treatments to see whether they were medically necessary, as was required for the Policy to cover the treatments. (*See* Evans Decl. ¶ 5, Ex. 5 at MEDICAL_0779-81; Policy at CP_024.) Thus, USAA CIC represents that it will call Dr. Chen for his "personal knowledge . . . having authored reports that were utilized in the handling of [Mr. Whitworth's] PIP claim." (MTE Resp. at 5.) Because USAA CIC was not required to disclose a lay witness as an expert witness, there is no occasion for the court to impose Mr. Whitworth's proposed sanction. Again, Mr. Whitworth provides no analysis of the law or the record to suggest otherwise. (*See id.*)

Mr. Whitworth's only remaining argument, presented in one sentence, is that "there is no basis for Dr. Chen to testify as a lay witness as he has never met [Mr. Whitworth], did not administer [his] claims with USAA nor have [sic] any direct contact with anyone who adjusted [his] claims." (MTE at 2.) Mr. Whitworth offers no support in the record or in the law for this contention. (*See id.*) To the contrary, the available

ORDER - 8

evidence in the record suggests that Dr. Chen participated in Mr. Whitworth's claim handling process by evaluating the medical necessity of his shoulder treatments. (*See* Evans Decl. ¶ 5, Ex. 5 at MEDICAL_0779-81.) Indeed, Mr. Whitworth himself included Dr. Chen as a possible witness in his initial disclosures and now, in his briefing, still attempts to "reserve[] the right to use the transcript and/or video of [Dr. Chen's] deposition" at trial, contradicting his position that there is no basis for Dr. Chen's testimony. (*See* Wilson Decl. ¶ 1, Ex. 1 at 6; MTE at 2.) Thus, the court rejects Mr. Whitworth's argument that Dr. Chen's lay testimony would not be relevant.[7]

In sum, the court denies Mr. Whitworth's motion to exclude Dr. Chen's testimony. The court further reprimands Mr. Whitworth's counsel for the subpar briefing, which falls below the standard of practice expected of attorneys appearing before this court. In future filings, the court expects Mr. Whitworth's counsel to clearly lay out his arguments with citations to both the record and applicable legal authority as support. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)) (internal quotation marks omitted).)

**B.     Motion for Partial Summary Judgment**

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

//

---

[7] Mr. Whitworth also takes issue with USAA CIC's plan to seek preservation of Dr. Chen's deposition. (MTE at 2.) Because USAA CIC has not yet sought this accommodation with the court, the issue is not ripe for adjudication. (*See* MTE Rep. at 7.)

Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Mr. Whitworth moves for summary judgment on both his bad faith and his CPA claims. (MSJ at 1.) The court address each claim in turn.

1. Bad Faith

"To succeed on a bad faith claim, the policyholder must show the insurer's breach of insurance contract was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). Whether an insurer acted in bad faith is generally a question of fact. *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 16 P.3d 574, 577 (Wash. 2001). If reasonable minds could differ as to whether an insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate. *Smith*, 78 P.3d at 1277-78.

Summary judgment is inappropriate here. Mr. Whitworth argues that USAA CIC acted in bad faith by (1) failing to promptly respond to his June 27, 2019, letter; and (2) failing to and delaying payments for physical therapy. (*See* MSJ at 3-4; MSJ Reply (Dkt. # 47) at 2.) But disputed issues of material fact exist regarding both of Mr. Whitworth's contentions.[8] First, as to Mr. Whitworth's June 27, 2019, letter, USAA CIC submits

---

[8] USAA CIC challenges the admissibility of Mr. Whitworth's evidence as "unauthenticated and hearsay." (MSJ Resp. at 10-11.) The court does not address this argument because even accepting Mr. Whitworth's presented evidence, it is insufficient for a grant of summary judgment.

evidence that it not only replied asking for more information but that the two parties continued to engage in negotiations regarding the charges in that letter.  (*See* Evans Decl. ¶ Ex. 4 at CF_2790, CF_2882-83; *id.* ¶ 2, Ex. 2 at 4, 7-8.)  Indeed, USAA CIC eventually adjusted the initial denial and partially reimbursed the physical therapy sessions.  (*See* Courtney Decl. at 1-2, Ex. A at MEDICAL_3164-65.)  Mr. Whitworth submits no additional evidence and no legal authority for why USAA CIC's handling of his letter in this manner is "unreasonable, frivolous, or unfounded."[9]  *See Smith*, 78 P.3d at 1277; (*see* MSJ; MSJ Reply.)  Reasonable minds could differ as to whether USAA CIC acted unreasonably in responding to Mr. Whitworth's June 27, 2019, letter as it did.

The court reaches the same conclusion as to Mr. Whitworth's second contention.  Mr. Whitworth submits one adjustment statement sent a year after the September 28, 2018, physical therapy sessions as evidence of delay.  (Courtney Decl. at 1-2, Ex. A at MEDICAL_3164-65.)  But USAA CIC submits evidence that, during this time, it consulted with third-party physicians to review Mr. Whitworth's medical claims; evaluated what is the reasonable cost of providing physical therapy services; initially declined Mr. Whitworth's claims in full; and engaged in negotiations with Mr. Whitworth to later adjust and partially reimburse the payments.  (*See* Evans Decl. ¶ 5, Ex. 5 at MEDICAL_0779-81, MEDICAL_3160-61, MEDICAL_3181; *id.* ¶ 4, Ex. 4 at

---

[9] The only legal authority cited by Mr. Whitworth appears in a one-sentence footnote: *Tank v. State Farm Fire & Casualty Company*, 715 P.2d 1133 (Wash. 1986), which Mr. Whitworth purports, with no pincite, to "lay[] out the 'good faith' duties of insurers." (MSJ at 4 n.6.)  Putting aside the unhelpfulness of providing only a footnote reference with no accompanying analysis, *Tank* largely focuses on an insurer's duty of good faith in the context of a wrongful refusal to defend, which is not the case here. *See* 715 P.2d at 1137-39.

CF_1662-66, CF_2772, CF_2790, CF_2811-12; Mills Decl. ¶ 50, Ex. 2 at 1; Courtney Decl. at 1-2, Ex. A at MEDICAL_3164-65, MEDICAL_3169-70.)  Again, Mr. Whitworth provides no analogous case law that, when viewing the record in the light most favorable to USAA CIC, this claim handling process constitutes bad faith.  Nor does the fact that USAA CIC did not fully cover the physical therapy sessions qualify as bad faith.  Mr. Whitworth's evidence may have established that USAA CIC denied full payment for the treatment, but not that the denial was wrongful, frivolous, unfounded, or unreasonable.[10]  (*See* Courtney Decl. at 1-2, Ex. A at MEDICAL_3169-70.)

Because the record shows clear disputed facts as to whether USAA CIC acted reasonably and reasonable minds could differ on the issue, the court denies Mr. Whitworth's motion for partial summary judgment on his bad faith claim.

2. CPA

The CPA prohibits unfair and deceptive trade practices.  *Peoples v. Un. Servs. Auto. Ass'n*, 452 P.3d 1218, 1220 (Wash. 2019) (citing RCW 19.86.020).  To prevail on a CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice (2) in trade or commerce (3) which affects the public interest (4) and causes injury to the plaintiff's business or property, and (5) a causal link between the act and the injury.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (1986).  Mr.

//

---

[10] Mr. Whitworth also claims that USAA CIC's denial of full payment caused Lynden Physical Therapy to deny him further care. (MSJ at 2 (citing Courtney Decl. at 2, Ex. C at 1).)  But his supporting evidence simply states that he "needs to look for a new [physical therapy] clinic" with no explanation as to why. (Courtney Decl. at 2, Ex. C at 1.)  Thus, Mr. Whitworth's evidence does not fully support that USAA CIC's denials caused the termination of service.

Whitworth alleges that USAA CIC's use of the Milliman Methodology is an unfair or deceptive act or practice that violates the CPA.  (*See* MSJ at 4-9; Reply at 2-4.)

Failure to conduct an individualized assessment—that is, "failing to consider and independently evaluate the identity, background, credentials, or experience or any personal characteristic of the individual provider or whether the amount charged was reasonable for the individual treatment provided"—qualifies as an unfair act in violation of the CPA.  *Folweiler Chiropractic, PS v. Am. Fam. Ins. Co.*, 429 P.3d 813, 818 (Wash. Ct. App. 2018).  Washington courts have interpreted the statutory and regulatory scheme to "unequivocally establish[] a duty to actually investigate and conduct a reasonable investigation of claims . . . [which] requires an individualized assessment and not simply applying a geographic based formula to each claim regardless of the individual circumstances." *Id.* at 819.

Mr. Whitworth's only proffered evidence on this point is that USAA CIC, in its response to a request for admission, acknowledged that it considered AIS's recommendations, which "in-part, implemented the Milliman [] [M]ethodology in evaluating the reasonableness of specific medical treatments."  (Courtney Decl. at 2, Ex. F at 5.)  But this evidence does not establish that USAA CIC relied only on the Milliman methodology in deciding the reasonableness of the claim.  (*See id.*)  In short, Mr. Whitworth seemingly argues that if USAA CIC utilized the Milliman Methodology at all, it has engaged in an unfair or deceptive act sufficient to undergird a CPA claim.  (*See* Reply at 4.)  That contention is not supported.  *See Eastside Physical Therapy, Inc., P.S. v. Un. Servs. Auto. Ass'n*, No. 78134-1-I, 2019 WL 4785609, at *7 (Wash. Ct. App. Sept.

30, 2019) (finding genuine issue of material fact as to whether USAA CIC is using Milliman Methodology without individualized assessment of reasonableness).[11]

But even if USAA CIC's use of the Milliman Methodology suffices as an unfair or deceptive act, that is but one element of a CPA claim. *See Hangman*, 719 P.2d at 535. Mr. Whitworth provides no analysis on any other element, even after USAA CIC challenged his ability to prove two other elements. (*See* MSJ at 4-9; Resp. at 15; *see generally* Reply.) For instance, Mr. Whitworth does not even mention causation, and USAA CIC introduces evidence that it stopped payments not because of the outcomes of the Milliman Methodology but because it had reached the maximum payout amount between Mr. Whitworth and his wife. (*See* Resp. at 4, 20-21; Evans Decl. ¶¶ 9-10; *see generally* MSJ; Reply.) Mr. Whitworth, as the plaintiff, carries the burden to prove each element of a CPA claim. *See Hangman*, 719 P.2d at 535. He has failed to do so here, and accordingly, the court denies his motion for partial summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Mr. Whitworth's motion to exclude (Dkt. # 19) and his motion for partial summary judgment (Dkt. # 20).

Dated this 16th day of June, 2021.

JAMES L. ROBART
United States District Judge

---

[11] *Eastside Physical Therapy* is unpublished and thus has no precedential value. *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 (9th Cir. 1993). However, the court cites the case to illustrate that Mr. Whitworth's argument is unavailing, even under his own case law. (*See* MSJ at 7 (citing *Eastside Physical Therapy*).)